IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 11-cv-00974-REB-KLM

OJORE N. LUTALO,

    Plaintiff,

v.

NATIONAL RAILROAD PASSENGER CORPORATION ("AMTRAK"),
LENINOVA FAYDO, in her official and individual capacities, and
JAMES BULLERWELL, II, in his official and individual capacities,

    Defendants.
_____

**ORDER ON MOTION FOR SPOLIATION SANCTIONS**
_____
**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

This matter is before the Court on Defendants' **Motion for Sanctions for Spoliation of Evidence and to Strike** [Docket No. 96; Filed August 17, 2012] (the "Motion"). Plaintiff filed a **Response to Defendants' Motion for Sanctions for Spoliation of Evidence and to Strike** [Docket No. 103; Filed September 7, 2012] (the "Response"). Defendants filed a **Reply in Support of Motion for Sanctions for Spoliation of Evidence and to Strike** [Docket No. 104; Filed September 24, 2012] (the "Reply"). The Court has reviewed the case file, pleadings, and applicable law and is fully advised in the premises. For the reasons set forth below, the Motion [#96] is **GRANTED in part.**

### I. Background

The facts of the case have been summarized by the District Judge in his Order Concerning Motions for Summary Judgment [#112; filed March 25, 2013] as follows:

> On January 26, 2010, Sue Blesi was a passenger aboard an
> Amtrak train known as the Southwest Chief. As the train was

approaching La Junta, Colorado, Ms. Blesi approached defendant Leninova Faydo, an Amtrak Car Attendant. Ms. Blesi told Ms. Faydo that Ms. Blesi was concerned about statements made by another passenger during phone conversations between the passenger and others. Ms. Blesi was sitting near the passenger who had been using the phone. The passenger on the phone was the plaintiff, Ojore Lutalo.

Ms. Blesi showed Ms. Faydo a card containing significant statements Ms. Blesi says she overheard. According to the evidence submitted by the plaintiff, the card read: "[H]ave you been shot?" "Homeland security is serious." 'We work in small groups." "Are you willing to go to jail?" The plaintiff's evidence indicates that Ms. Blesi never heard and never reported any statement by Mr. Lutalo involving a bomb or any type of bomb threat, nor did she hear any statement indicating that Mr. Lutalo possessed a weapon on the train.

Ms. Faydo notified Assistant Conductor James Bullerwell, III, who was onboard the train. Assistant Conductor Bullerwell spoke directly to Ms. Blesi and notified Conductor George Flores. Mr. Flores apparently reviewed the card written by Ms. Blesi and spoke to Ms. Blesi. From the train, Conductor Flores called Trainmaster James Bullerwell, II, who was in La Junta, Colorado. According to the plaintiff's evidence, Conductor Flores read Ms. Blesi's card to Trainmaster Bullerwell and asked Trainmaster Bullerwell to have the La Junta Police Department (LJPD) present as observers when Conductor Flores talked with Mr. Lutalo when the train was in La Junta. According to the plaintiff's evidence, Conductor Flores did not use the word "bomb" when speaking to Trainmaster Bullerwell, and said nothing indicating that he thought the passenger might be planning to bomb a train, a building, or anything else.

Trainmaster Bullerwell called the dispatcher for the LJPD and reported the situation on the train. When asked by the dispatcher if Mr. Lutalo had said something about bombing the train, Trainmaster Bullerwell said, "Yeah. Stuff like, 'Gonna bomb this train.'" *Plaintiff's Motion for Summary Judgment* [#59], Exhibit 9 [#59-10] (transcript of call to dispatcher), CM/ECF p.2. Sgt. Shawn Mobley of the LJPD was among the officers who met the train at the station in La Junta. According to Sgt. Mobley, Ms. Faydo told him at the train station that she personally had heard Mr. Lutalo say something about bombing the train.

> Based primarily on the reports of Trainmaster Bullerwell and Ms. Faydo, Sgt. Mobley arrested Mr. Lutalo who was charged under §18-9-115(1)(c)(II), C.R.S., which defines the crime of endangering public transportation. Mr. Lutalo was held in jail until January 28, 2010, when he was released on bond. On February 3, 2010, the Otero County District Attorney dismissed the charge against Mr. Lutalo.

This lawsuit was filed in April of 2011. Following the ruling on the parties' Motions for Summary Judgment, the following claims will be tried: (1) false arrest against Defendant Amtrak; (2) malicious prosecution against Defendant Amtrak; (3) false imprisonment against Defendant Amtrak; (4) race discrimination under 42 U.S.C. §1981 against Ms. Faydo only; and (5) negligence against all defendants.

## II. Analysis

Defendants claim that Plaintiff was using a "no-contract" mobile telephone on the train, and "despite knowledge that the [phone] was the only source of identifying whom he spoke with on January 26, 2010 and despite a specific request to stop using the phone for preservation purposes, Plaintiff continued to use his phone in a manner intended to destroy evidence that would identify with whom he spoke and then claims to have lost it shortly thereafter." *Motion* [#96] at 1. Defendants seek sanctions for spoliation. More specifically, they seek an adverse inference instruction, an order preventing Plaintiff or any Plaintiff's witness from testifying about what Plaintiff said on the phone, an order striking from the Plaintiff's summary judgment briefing all alleged facts offered by Plaintiff regarding the contents of his cell phone conversations aboard the train[1], and their attorneys' fees and costs incurred in filing the Motion. *Id.* at 2-3.

**A.   Relevance**

---

[1] Because the District Judge has already ruled on the parties' Motions for Summary Judgment, this request is moot, and the Court does not address it further.

The Tenth Circuit Court of Appeals has held that alleged spoliated evidence must be relevant in order to demonstrate the prejudice necessary to justify imposition of a spoliation sanction. *Henning v. Union Pac. R.R. Co.*, 530 F.3d 1206, 1220 (10th Cir. 2008). Plaintiff contends, first and foremost, that the evidence to be gained from the lost phone, *i.e.*, evidence regarding to whom Plaintiff spoke while on the train and what he said, is not relevant to his claims. Plaintiff insists that his claims arise from the alleged lack of probable cause to arrest him as well as Defendants Faydo and Bullerwell's false statements "that Plaintiff said something about bombing the train." He argues that all of his claims "arise from Defendants' statements. Plaintiff contends those statements were knowingly false or made in reckless disregard of the truth. None of his claims are premised on any statement anyone on the train claims Plaintiff made." *Response* [#103] at 1-2.

Defendants assert that "Plaintiff's call history records in his cell phone are relevant because they would have identified the additional individuals with whom Plaintiff spoke and given Defendants the opportunity to question them about the their topics of conversation with Plaintiff. Moreover, Plaintiff's [deposition] testimony and partial call records have accounted for only about an hour of time on his cell phone, while Mr. and Mrs. Blesi both testified Plaintiff was on the phone for hours. Had Plaintiff preserved the phone, it would have provided evidence showing when Plaintiff was on the phone on January 26, 2010, and the telephone numbers he spoke with." *Motion* [#96] at 8.

Defendants explain their contention that the phone contained relevant information in more detail in their Reply. They reiterate that without the phone and its stored telephone numbers, "Defendants are forever unable to establish the identities of other individuals with whom Plaintiff spoke or to present evidence from these unknown individuals regarding the

-4-

content of the telephone conversations." *Reply* [#104] at 1. Defendants assert that the information which is no longer available to them is "evidence of comparative negligence" and "relevant to Plaintiff's claim he suffered emotional distress by virtue of comments on the internet. Ultimately, because he failed to preserve his phone, Plaintiff has been able to self-select witnesses who might appear relatively innocent and support his version of the conversations." *Id.* at 8-9.

The Court agrees. Although the heart of Plaintiff's remaining claims relates to the alleged false statements made by Defendants Faydo and Bullerwell, it is difficult to imagine trial of those claims without some testimony relating to the content of the phone conversations. The parties' summary judgment briefing demonstrates that such testimony may be elicited from Ms. Blesi, Mr. Blesi, Plaintiff or any or all of the three. Relevance is not so narrowly construed as to limit a story to its final chapter, and neither party is entitled to make it impossible for all meaningful parts of the story to be told. Most broadly construed, the case is about what happened on the train and in La Junta as a result of Plaintiff's phone conversations. Less broadly construed, the case is indisputably about Plaintiff's credibility, whether he was comparatively negligent in the series of events that led to his arrest, and whether and to what degree he suffered emotional distress from his arrest. At the very least, then, the content of Plaintiff's phone conversations is relevant to his credibility as well as his negligence and emotional distress claims. *See, e.g.*, *New Jersey v. T.L.O.*. 469 U.S. 325, 345 (1985) (discussing the relevance of certain evidence both to the justification of a search and to the defendant's credibility) (citing *Warden v. Hayden*, 387 U.S. 294, 306-07 (1967)); *Carbajal v. Warner*, No. 10-cv-02862-REB-KLM, 2013 WL 1129429, at *3 (D. Colo. Mar. 18, 2013) (stating that relevancy is broadly

construed) (citing *Sheldon v. Vermonty*, 204 F.R.D. 679, 689-90 (D. Kan. 2001).

**B.     Duty to Preserve**

The Tenth Circuit has held that "a spoliation sanction is proper where (1) a party has a duty to preserve evidence because [he] knew, or should have known, that litigation was imminent, and (2) the adverse party was prejudiced by destruction of the evidence." *Henning*, 530 F.3d at1220 (citing *Burlington N. & Santa Fe Ry. Co. v. Grant,* 505 F.3d 1013, 1032 (10th Cir. 2007)).  Plaintiff asserts that he had no duty to preserve the phone when it was inadvertently lost "around February 20, 2010, because litigation was not imminent or likely."  *Response* [#103] at 2, 13-14.

Defendants argue that Plaintiff reasonably anticipated litigation by early February of 2010, prior to allegedly losing his phone.  Defendants point to an email from Plaintiff's friend, Bonnie Kerness, dated January 31, 2010, which indicates a desire to "preserve" the phone and to obtain assistance in providing Plaintiff with a new phone. *Motion* [#96] at Ex. K.  Plaintiff does not deny receiving Ms. Kerness' email.  Defendants further explain that Ms. Kerness was retained as a legal assistant to Plaintiff's counsel for purposes of this action.  *Id.* at Ex. D, 165:4-7.  Ms. Kerness sent the January 31, 2010 email after an "extensive" conversation with Plaintiff's counsel.  *Id.* at Ex. K.  Although Plaintiff testified in his deposition that someone spoke to him in Denver about the part of the email relating to preservation of the old phone and obtaining a new one, he also testified that he "can't recall" whether Ms. Kerness told him to preserve his old phone, although "she might have." *Id.* at Ex. E, 387-89:23-3.

Perhaps more significantly, Defendants point to a series of communications between counsel and Ms. Kerness from early to mid-February, 2010 discussing and evaluating

-6-

Plaintiff's potential lawsuit. Plaintiff claims that these communications are subject to the attorney-client privilege and work product protection and has listed them on a privilege log. *Reply* [#104] at 3-4. Moreover, on February 18, 2010, Plaintiff's "close friend," Tim Fasnacht, sent an email to the Anarchist Black Cross network "stating unequivocally that Plaintiff 'intends to pursue a civil liability suit against Amtrak' and soliciting money for that purpose." *Id.* at 6-7; *Motion* [#96] at Ex. M; *Plaintiff's Response to Motion for Summary Judgment* [#91] at Ex. 1, ¶ 3. Two days later, Plaintiff had a new cell phone number. *Motion* [#96] at Ex. Q.

Plaintiff asserts that "when the phone was lost, litigation was no more than a possibility for Plaintiff, a hope he had." *Response* [#103] at 14. This contention is explicitly contradicted by Mr. Fasnacht's email of February 18, 2010. When a party knows that "future litigation is likely," he is obligated to preserve evidence. *Cache La Poudre Feeds, LLC v. Land O'Lakes, Inc.,* 244 F.R.D. 614, 621 (D. Colo. 2007). The Court has no difficulty finding that Plaintiff had a duty to preserve his phone.

**C. Prejudice**

"The burden is on the aggrieved party to establish a reasonable possibility, based on concrete evidence rather than a fertile imagination, that access to the lost material would have produced evidence favorable to his cause." *Gates Rubber Co. v. Bando Chem. Indus., Ltd.,* 167 F.R.D. 90, 104 (D. Colo. 1996) (citing cases). Plaintiff asserts that the loss of the phone did not prejudice Defendants, because they do not contend that "anyone would have provided information that Plaintiff spoke about bombing the train." Plaintiff asserts that it is "undisputed that Plaintiff said no such thing and no one on the train claims he did." *Response* [#103] at 15.

Plaintiff views the case too narrowly. As indicated above, it is about more than whether Plaintiff said something about bombing the train while on the telephone.[2] The case necessarily encompasses proof of who Plaintiff was talking to and what he was saying for the "hours" that he was on the phone while riding the train, because that evidence relates to Plaintiff's credibility, whether his conduct was comparatively negligent, and whether he suffered emotional distress from the events that occurred. Defendants have been denied a complete record of Plaintiff's phone conversations, which very possibly would have shed light on those issues. Accordingly, they have been prejudiced by Plaintiff's loss of his phone.

**D.     Sanctions**

When, as here, a party has a duty to preserve evidence which is lost or destroyed and the adverse party is prejudiced by its absence, sanctions are appropriate. *Turner v. Pub. Serv. Co. of Colo.*, 563 F.3d 1136, 1149 (10th Cir. 2009). Defendants seek an adverse inference instruction[3] and an order preventing Plaintiff or his witnesses from testifying about what he said on the phone. "[I]f the aggrieved party seeks an adverse inference instruction to remedy the spoliation, it must also prove bad faith." *Id.*

Plaintiff argues that a showing of "bad faith" does not require proof of evil intent, but instead a mere failure to act to preserve evidence within a party's control. *Reply* [#104] at 10 (citing *McCargo v. Tex. Roadhouse, Inc.*, 2011 U.S. Dist. LEXIS 49320, at *22 (D. Colo.

---

[2] Indeed, if that were the sole factual issue in the case, one wonders why trial would even be necessary. As the District Judge concluded, summary judgment is not appropriate on all of Plaintiff's claims because "there are a variety of disputed issues of material fact which preclude the entry of summary judgment." [#112] at 3.

[3] An adverse inference instruction to the jury would advise them that due to Plaintiff's loss of his phone and the inability to gather evidence from it about the identity of those he called and the content of their conversations, the jury may infer that such evidence would be negative to Plaintiff and his claims. *See, e.g.*, *Smith v. Nichols*, No. 12-1029, 2013 WL 11904, at *3 (10th Cir. Jan. 2, 2013).

May 2, 2011); *E.E.O.C. v. Dillon Cos.,* 839 F. Supp. 2d 1141, 1145 (D. Colo. 2011). However, neither the *McCargo* court nor the *Dillon Companies* court ordered sanctions based on a mere showing of negligent destruction of evidence. Instead, the *McCargo* court imposed sanctions based on the defendant's "highly culpable" behavior. 2011 WL 1638992 at *9. The *Dillon Companies* court explicitly held that the defendant had acted intentionally in "bad faith." 839 F. Supp. 2d at 1145.

Here, the Court has no basis to assume that the loss of the phone was other than accidental. Even Defendant acknowledges that Plaintiff "claims to regularly lose phones." *Reply* [#104] at 10. The fact that Plaintiff is an experienced litigant and that he was "actively collecting evidence in support of his case" does not demonstrate that he intentionally lost or destroyed the phone at issue here. Although he certainly could have – and should have – been more careful with the phone, I cannot find that he acted in bad faith if the phone "slipped out of his coat and onto the train tracks," as he claims. *Response* [#103] at 2.

Nevertheless, I agree that some sanction is appropriate. A person who knows that he is actively pursuing litigation that involves his use of a disposable cell phone cannot disregard his duty to preserve it even before the case is filed. Indeed, based on the nature of the efforts being made by others on Plaintiff's behalf before the lawsuit was filed (multiple communications with potential counsel, fund-raising, tracking media coverage of the event, etc.), Plaintiff was remarkably careless in disregarding his duty to preserve the phone. However, an adverse jury instruction is too harsh and is unwarranted as a sanction for the negligent "spoliation" of evidence in the circumstances presented here.

Accordingly, the Court grants the Motion in part. As a sanction, Plaintiff will not be

permitted to introduce any evidence at trial relating to who he called while on the train or what he said during his conversations, either through his own testimony, testimony of other witnesses, or documents. Defendants may introduce such evidence if they wish. In addition, Defendants will be permitted to present evidence, if they wish, of the preservation email and Plaintiff's failure to preserve the phone. Defendants may argue whatever inference they hope the jury will draw. Plaintiff may present evidence in explanation, assuming of course that the evidence is otherwise admissible, and argue that no adverse inference should be drawn. *See Christou v. Beatport, LLC,* No. 10-cv-02912, 2013 WL 248058, at *14 (D. Colo. Jan. 23, 2013). Further management of such evidence will be left to the discretion of the District Judge at trial.

Finally, Defendants are awarded their reasonable costs and attorneys' fees incurred in filing the Motion. *See FatPipe Networks India, Ltd. v. Xroads Networks, Inc.*, No. 2:09-CV-186 TC DN, 2012 WL 192792, at *6-7 (D. Utah Jan. 23, 2012); *Asher Assocs., LLC v. Baker Hughes Oilfield Operations, Inc.*, No. 07-cv-01379-WYD-CBS, 2009 WL 1328483, at *12 (D. Colo. May 12, 2009). Defendants shall file an affidavit in support of the award of fees and costs in accordance with D.C.COLO.LCivR 54.3B. on or before **April 5, 2013**. Plaintiff may respond on or before **April 12, 2013**. No reply will be permitted.

Dated: March 28, 2013

BY THE COURT:

Kristen L. Mix
United States Magistrate Judge